LEON BLUM ET AL. v. MINERVA MERCHANT ET AL.

(Case No. 1422.)

1. ESTOPPEL.— The elements of estoppel are: A false representation, or concealment of material facts, made with a knowledge of the facts; ignorance on the part of the person to whom the representations are made, or from whom the facts are concealed; intention that such person should act upon it, and action on his part induced thereby. Thus, if goods of another are seized under execution against a debtor, after representations made by such debtor that he was the true owner, and the real owner did not join in such representations or fail to deny them when he had an opportunity of preventing the creditor from being deceived by them, the true owner would not be estopped from controverting their truth in an action against the creditor for their value.

2. ESTOPPEL — CHARGE OF COURT.— See opinion for a charge on estoppel held defective.

3. CASE APPROVED.— Wallace v. Finberg, 46 Tex., 35, approved.

4. DAMAGES.— The measure of actual damages for the wrongful seizure and conversion of goods is their value at the place where they are seized on the day of the conversion, and interest on that value. The fact that this rule would include the profit involved in that value, resulting from the goods being more valuable at the place where they are seized than at the distant market where they were purchased, does not alter the rule.

APPEAL from Jefferson. Tried below before the Hon. W. H. Ford.

Minerva Merchant, the surviving wife of James A. Merchant, deceased, suing for herself and James P. Merchant, Laura M. Merchant, Ambrose P. Merchant, Ida Merchant and Tip Merchant, the minor children of herself and deceased, and Lizzie Pietzcker, joined by her husband, Ezra J. Pietzcker, brought this action against appellants to recover damages for the alleged wrongful taking and conversion by appellants of certain personal property claimed by appellees. In their original amended petition, filed April 13, 1882,

appellees allege that they owned, by inheritance from said James A. Merchant, deceased (there being no administration), a stock of goods, wares and merchandise in a store at Sour Lake station, in Jefferson county, which had cost, and were at the date of the alleged conversion worth, at wholesale in Galveston, the sum of $303.39, and that the freight and charges thereon from Galveston to said station were reasonably worth and would cost $30, and that they were worth February 2, 1881, where they then were, the sum of $433.51.

That on February 2, 1881, appellants, the Blums, pretending to have a claim against Ezra J. Pietzcker, instigated and induced Langham, one of the appellants, who was then sheriff of the county, to seize the goods, which he, Langham, then did; that thereby appellees suffered damages in the sum of the value of the goods, to wit, $433.51, and the sum of $1,000 for the loss, breaking up, diversion and destruction of appellees' trade and mercantile business, and $1,000 for mental anguish suffered by appellees by reason of the seizure.

Appellants filed a general demurrer, excepted to the prayer for damages as too remote, consequential, etc., and a general denial.

No action appears to have been taken by the court on the demurrer or exceptions. A trial by jury resulted in a verdict for appellees for $479.04, upon which judgment was rendered. Appellees entered a *remittitur* of $4.01. Motion for new trial overruled, wherefore this appeal upon the following assignments of error and propositions:

The seizure of the goods was shown.

Pietzcker managed the business before and after J. A. Merchant's death. Minerva Merchant knew nothing of the business. Appellees admitted a valid judgment and execution in favor of the Blums against Pietzcker, which was levied on said goods. Pevito (a neighbor) testified that the sign over the door was "General Country Merchandise," and nothing more; that Pietzcker kept it and seemed to have the control of it; that goods came to the station marked "J. J. Merchant," "Diamond P." and E. J. Pietzcker, and went to the store; that he knew of no goods marked "J. A. Merchant" going into the house. Hutchins (agent for Blum) testified that Pietzcker told him, H., that the store was his, P.'s, but that he was running it under an assumed name to ward off creditors. Pietzcker testified that goods marked "E. J. Pietzcker" were goods that he had ordered for persons living in the country.

James A. Merchant, Jr., a son of James A. Merchant, deceased,

testified that the goods had come to Sour Lake marked "J. J. Merchant" and "Diamond P.;" the "Diamond P." was for himself; that when the sheriff came to make the levy, he told the sheriff and Hutchins that the goods did not belong to him, but that they belonged to Mrs. Merchant and her children; that the levy was made over his protest; that witness was, when testifying, the owner of the remainder of the stock of goods, having purchased them from Mrs. Merchant. He stated that the goods marked C. J. Pietzcker were private orders for persons living in the country.

Mrs. Merchant testified to her ownership of the goods, and that Pietzcker only managed the business for her, as he had before her husband's death for him, and that the defendants procured the seizure and carried off the goods without her knowledge or consent.

*Scott & Levi*, for appellants.

I. The court erred in refusing to give the special charge asked by the defendants and filed May 25, 1882, which is as follows: " If the jury believe that E. J. Pietzcker held himself out before the levy as the owner of the goods, and that he was generally understood and considered to be the owner of the goods levied upon; that he bought and sold goods and collected the money derived from sales; that he managed and controlled the business; that he held himself out to be the owner, and the plaintiffs in this case permitted him so to do, and held himself out to the world; that Leon & H. Blum had the levy made, and the defendant Langham made the levy in the belief that he, Pietzcker, was the owner of the goods levied on, arising from the facts so made to appear to them and the world,— then the law will hold him, the said Pietzcker, to be that which he was made by the owner and himself to be, and if you so believe you will find for defendants." Addison on Torts, § 537.

II. The jury, by its verdict, having clearly adopted the value of the goods at the date of conversion as the measure of damage, should have found that value in their verdict before adopting it as a measure of damage, and should not have assumed as true the plaintiffs' allegations as to a material and contested point in the case, to wit, the value of the goods converted, except in so far as said allegations operate in defendants' favor.

. . . IV. The value of the goods at the date of the conversion, and interest thereon from said date at eight per cent., was the true measure of the damage, and the value was such a sum as would replace the goods. Prospective profits could form no proper element of damages, and the retail price at which appellees proposed to sell

said goods was not a correct measure of damages.    Wallace *v.* Finberg, 46 Tex., 35; Harris *v.* Finberg, 46 Tex., 80; Clark *v.* Wilcox, 31 Tex., 322; Munerlyn *v.* Alexander, 38 Tex., 125; Walcott *v.* Hendrick, 6 Tex., 406; Sedgwick on Measure of Damages, p. 69; Drake on Attachments, secs. 175–182; Butler *v.* Collins, 12 Cal., 457; Cushing *v.* Longfellow, 26 Me., 306; Schindel *v.* Schindel, 12 Md., 108; Campbell *v.* Woodworth, 26 Barb. (N. Y.), 648.

No briefs for appellee have reached the Reporter.

WILLIE, CHIEF JUSTICE.— Of the various errors assigned, we will notice two only; one as to the refusal of the court to give the charge asked by defendants' counsel, the other as to the measure of damages established by the court in its charge, and found by the jury in their verdict.

The charge refused is as follows: "If the jury believe that E. J. Pietzcker held himself out before the levy as the owner of the goods, and that he was generally understood and considered to be the owner of the goods levied upon; that he bought and sold goods and collected the money derived from sales; that he managed and controlled the business; that he held himself out to be the owner, and the plaintiffs in this case permitted him so to do, and held himself out to the world; that Leon & H. Blum had the levy made, and the defendant Langham made the levy in the belief that he, Pietzcker, was the owner of the goods levied on, arising from the facts so made to appear to them and the world,— then the law will hold him, the said Pietzcker, to be that which he was made by the owner and himself to be, and if you so believe you will find for defendants."

The vice of this charge consists in its failure to bring out clearly the necessity that the plaintiffs, after full knowledge that Pietzcker was claiming the goods as his own, should have stood by and enabled him to deceive others, and entice them into dealing with him as the true owner of the property.    The charge seeks to estop the plaintiffs from claiming the property by reason of some act or neglect on their part which has led others into a course which they would not have pursued but for the conduct of the plaintiffs.    The elements of an estoppel are: A false representation, or concealment of material facts, made with a knowledge of the facts; ignorance on the part of the person to whom the representations are made, or from whom the facts are concealed; intention that such person should act upon it, and action on his part induced thereby.    No matter what representations were made by Pietzcker himself as to his

ownership of the property, if these did not come to the knowledge of plaintiffs, and they did not join in these representations, or fail to deny them when they had an opportunity of preventing others from being deceived by them, they would not be estopped from controverting them at any other time. But without entering into further criticism on the charge asked, it is sufficient to say that the court should have refused it for the reason that the evidence did not authorize its being given.

It was proven that Pietzcker managed the business both before and after the death of J. A. Merchant, and kept and seemed to have control of the store; that the sign over the door was "General Country Merchandise," and that goods came to the station marked "J. J. Merchant," "Diamond P" and E. J. Pietzcker, and went to the store, and that no goods marked "J. A. Merchant" were known to go into the house. It was proved that Pietzcker said to Blum's agent that the store was his, but that he was running it under an assumed name to deceive his creditors. It was also proved that the goods marked "E. J. Pietzcker" were ordered for other persons living in the country. This evidence nowhere establishes that the plaintiffs knew any of these facts. Mrs. Merchant knew nothing of the business, but such ignorance does not imply knowledge that Pietzcker was claiming it as his own. And every other transaction proven in the testimony might have occurred, and from the evidence did occur, without the knowledge of the plaintiffs. Some of these facts are of the most innocent character, such as the sign over the door, and the marks on the goods, and where at all suspicious are explained as consistent with fair dealing. The only fact of any significance is the statement made by Pietzcker to Blum. This remark was not authorized by plaintiffs or made known to them, and they are not bound by it. Moreover, the very statement itself that Pietzcker was running the store under an assumed name (which must have been that of plaintiffs) shows anything else rather than a holding himself out to the world as the owner of the goods. There were no facts proven which justified the court in submitting to the jury the instruction asked, and it was properly refused.

As to the damages, the measure as laid down by the court and found by the jury was exactly in accordance with the law as established in the case of Wallace v. Finberg, 46 Tex., 35. It is said that it was incorrect because it allowed profits upon the sale of the goods, and that these are too uncertain to enter into a calculation of damages. In one sense of the words it may be said that profits are included in such damages. The law allows the value of the

goods at the place where they are seized on the day of the conversion. It takes no account of their cost in some distant market and the expenses of their transportation. The object of the law is to compensate for the loss. What the injured party has lost is the value of the goods; and their value is the amount they would sell for at the place of seizure at the very time it occurred. This may be a greater sum than their cost, and the difference is the profit; still he gets no more than their value. If plaintiffs had bought them in Galveston, as was the proof; and before being shipped they had risen in the market so as to be worth fifty per cent. more than they gave for them, they would upon seizure then have been entitled to recover this increased value, although it was composed in part of profits. They were entitled to interest to compensate them for the detention of the goods, or rather of their value, as is also decided in the case above cited.

The petition, the evidence, the charge and the verdict all show that the damages were rightly computed and had no element of uncertain profits entering into the calculation.

There is no error in the judgment, and it is affirmed.

AFFIRMED.