## P. J. WILLIS & BRO. v. F. L. LOWRY.

(Case No. 2056.)

1. ATTACHMENTS—MEASURE OF DAMAGES—The measure of damages for wrongful attachment of goods is the market value of the goods at the time the attachment was served, with legal interest. (Following Tucker v. Hamlin, 60 Tex., 174, etc.)

2. SAME—DAILY SALES—DISPOSITION OF PROCEEDS—A solvent merchant has the right to dispose daily of his goods and to use the money for his own private purposes, and place it where it can not be reached by his creditors except at his own pleasure. He may not intend to pay this particular money out to his creditors, and yet an attachment will not lie against him. See facts for charge properly refused.

3. IMPROPER LANGUAGE OF COUNSEL—A judgment will not be reversed because improper language was addressed by counsel to the jury, unless the verdict is against the weight of evidence, or excessive.

Appeal from Smith. Tried below before the Hon. Felix J. McCord.

This was a suit by P. J. Willis & Bro. on two notes, accompanied by attachment proceedings. The defendant, F. L. Lowry, reconvened for actual and exemplary damages. On the trial the amount of the two notes ($2288.85) was adjudged in favor of Willis & Bro., and the sum of $2930.27 adjudged in favor of defendant, Lowry, as actual damages. This left the net judgment of Lowry, defendant, against Willis, plaintiff, $641.42. The issues made on the trial involved the question as to the existence of grounds for suing out the attachment.

The court charged the jury that "the measure of actual damages in a case like this will be the market value of the goods attached at the time the attachment was served, with legal interest, that is, at eight per cent. per annum on the amount."

Special charge number four, asked by the plaintiff and refused by the court, was:

"The jury are instructed that if F. L. Lowry, the defendant, was engaged in the daily disposition of his goods, wares and merchandise to such persons as would purchase, and was using the money for his own private purposes, or placing it where the creditors could only reach the money at Lowry's own pleasure, and not with the intention of paying it over in the regular course of business to his creditors, then this would constitute a good ground for attachment, and you could not find any damages for defendant."

The following language was used by defendant's counsel in addressing the jury: "I have often heard lawyers for attaching creditors speak of these attachment suits, and they call it 'wrecking.' P. J. Willis & Bro. are cold, clammy and toad-like men, as conscienceless as a piece of ice. P. J. Willis & Bro., Marx & Kempner, and Leon & H. Blum have built themselves up on these attachment suits, and go on from

year to year robbing country merchants. The Texas Reports are full of attachment cases brought by P. J. Willis & Bro. They think they are lords of the island to whom the people of Texas belong, and they should be stopped in their career."

*Chilton, Robertson & Finley*, for appellants.

*Hogg & Duncan*, for appellee, on measure of damages, cited : Block *v.* Sweeney, 63 Tex., 425; Tucker *v.* Hamlin, 60 Tex., 174; Blum *v.* Merchant, 58 Tex., 400.

On language of counsel, they cited : Railway Company *v.* Irvine, 64 Tex., 529.

WILLIE, CHIEF JUSTICE.—The charge of the court on the measure of damages was in exact accordance with frequent decisions of this court upon the question. It will not be necessary to notice the objections made to it, further than to cite the cases in which these decisions were made. Block *v.* Sweeney, 63 Tex., 425; Tucker *v.* Hamlin, 60 Tex., 174; Blum *v.* Merchant, 58 Tex., 400; Wallace *v.* Finberg, 46 Tex., 35; Weaver *v.* Ashcroft, 50 Tex., 427.

There was no error in refusing special charge No. 4, asked by appellants. A solvent merchant has surely the right to dispose daily of his goods, and to use the money for his own private purposes, and place it where it cannot be reached by his creditors except at his own pleasure. He may not intend to pay this particular money over to his creditors, and, yet, an attachment will not lie against him. A merchant's business is to sell goods to his customers. He may appropriate their proceeds to the payment of his debts, but, if he does not, he has not necessarily disposed of his property for the purpose of defrauding his creditors. He may pay his debts with money raised in some other way; or, being solvent, he is supposed to have other property, besides the money thus obtained, out of which his debts may be made under execution. The charge requires a merchant to keep the money realized from daily sales, where his creditors may lay hold of it at any time. If he purchase other goods with it, or invest it in real estate, he can be closed out, though he have ample other means with which to pay his debts, and actually does pay them as fast as they fall due. Some creditor, whose debt is not due, may sue out an attachment, break up the merchant's business, and ruin his credit, yet save himself from damages by showing that his debtor did not keep the proceeds of his sales in sight of his creditors, or use these particular funds in payment of his debt. It is doubtful if there be many mer-

chants, who, if suddenly called on by a creditor, could make the showing required by this charge.

We are applying the charge to the case of a solvent merchant. There may be some conflict of evidence as to Lowry's solvency; but there is abundant testimony to that effect in the record. If the charge was correct as applied to an insolvent merchant, it should have been so limited; otherwise, if given, the court would have assumed as true a fact left doubtful by the evidence, a fact which the jury alone were authorized to determine. It properly refused thus to encroach upon the province of the jury.

We think the language complained of in the third assignment should not have been used by the counsel in addressing the jury. The court should have forbidden it, though not asked to do so, notwithstanding opposing counsel had a right to reply. The judge should stop the lawyer who first indulges in abusive remarks not authorized by the record. The right to reply does not cure the evil. It merely gives opposite counsel occasion to retort with similar language, so that the contest resolves itself into a war waged outside of the record, in which the one most fertile in abusive epithets is most likely to prove victor. But we have always held that we would not reverse for the use of such language, except when the preponderance of evidence was against the verdict, or when an excessive verdict seemed to have been produced by such conduct.

The verdict here was for the amount as proved by the testimony of Lowry. His opportunity of knowing the value of the goods in the condition they were when attached, was better than that of any other witness who testified in the case. The other witnesses estimated them after they were seized and after they had been inventoried, and of course after they had been thrown into more or less disorder. They were doubtless sold in this condition. It is also matter of common knowledge that goods, when sold under the hammer, seldom bring their true value. We cannot say, therefore, that the evidence so preponderated against the verdict as to show that it was not the result of cool and dispassionate deliberation on the part of the jury. We cannot say but that they believed the witness most likely to know the cash value of the goods, and would have believed him though nothing had been said to excite prejudice in his favor. When unliquidated damages having no standard by which they can be certainly measured or claimed, great discretion is allowed the jury in fixing the amount of their verdict. In such case there is much opportunity for passion or prejudice to show its influence. But when the exact amount of damages can be reached by positive proof, as in the present case, and the verdict

has not gone beyond the amount clearly proved by credible witnesses we cannot say that the jury have not found according to their best judgment, and in accordance with their estimate of the evidence before them. There is no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered October 22, 1886.]