VIRGINIA FIRE AND MARINE INSURANCE COMPANY V. F. CANNON & CO.

Delivered April 14, 1898.

1. Fire Insurance—Proof of Value of Property.

The actual cash value at the time of the fire of a large amount of cotton bagging covered by a policy of insurance is not necessarily determined by the price at which it could have been sold in car load lots, or the lower price conceded to jobbers for larger quantities, but such prices are evidentiary only where there is no market price for such a quantity of bagging either in car load lots or in job lots.

2. Same—Market Value.

The actual cash value of an article may be shown by showing the market value, but that is not the only criterion or evidence of it.

3. Same—Requirement of Appraisal.

The provision of a policy of insurance for the ascertainment of the amount of loss by appraisers if the insurer and insured disagree, is for the insurer's benefit, and the failure to submit the loss to appraisal is not a defense unless an appraisal was insisted upon, where the policy further provides that the insurer shall not be deemed to have waived any provision or condition or forfeiture by any "requirements," and that the loss shall not become payable until after the furnishing of proofs of loss, including an award by appraisers "when appraisal has been required."

4. Same—Waiver of Appraisal.

The acceptance by the insurer with approval and without objection of proof of loss which does not contain an award of appraisers is a waiver of the provision of a policy with reference to an appraisal which requires an appraisal to be made before the proofs of loss are furnished and to be a part thereof.

5. Same—Same—Pleading and Evidence.

Evidence that an appraisal has been waived is admissible under a petition in an action upon a policy of insurance averring that the policy provided that the loss should be ascertained by appraisal, if the insurer and insured disagreed, but that the provision was waived and defendant utterly failed to carry out or insist upon its being carried out, and that "satisfactory proofs of loss" were furnished, the policy requiring the appraisal, if made, to be furnished along with the proofs of loss.

6. Same—Proofs of Loss.

Error in refusing a requested instruction that the proofs of loss were not evidence of the value of property destroyed, is not prejudicial where the person who swore to the proofs was on the stand and repeated before the jury the statement therein respecting the value, and was fully examined and cross-examined touching the same.

APPEAL from Galveston.   Tried below before Hon. WILLIAM H. STEWART.

*Thompson & Wood* and *Harris, Etheridge & Knight*, for appellant.

*Scott, Levi & Smith*, for appellee.

GARRETT, CHIEF JUSTICE.—This suit was brought to recover upon a fire insurance policy issued to F. Cannon & Co. by the Virginia Fire and Marine Insurance Company for the sum of $10,000 upon cotton bagging, loss, if any, payable to the Ludlow Manufacturing Company, of Boston, Mass.   The bagging was destroyed by fire during the life of the policy, on Sunday, July 12, 1896, and the policy sued on is one of several concurrent policies.   The total value of the bagging destroyed

was more than \$133,500, which amount was the total concurrent insurance. The policy was issued March 11, 1896, to F. Cannon & Co., a firm composed of F. Cannon alone, who was the bailee of the property, and sued with the consent of the Ludlow Manufacturing Company.

,The conditions of the policy, so far as material to the questions involved, are as follows:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, and, the amount of damage or loss having been thus determined, the sum for which this company is liable pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company, in accordance with the terms of this policy."

It then provides for the making of proofs of loss by sworn statement showing the amount of loss and whether or not the policy had been breached, then follows: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire, and the award, in writing, of any two shall determine the amount of such loss; the parties thereto·shall pay the appraisers respectively selected by them and shall bear equally the expenses of the appraisal and umpire."

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

"No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

"Wherever in this policy the word 'insured' occurs, it shall be held to include the legal representative of the insured, and wherever the word 'loss' occurs, it shall be deemed the equivalent of 'loss or damage.' "

The bagging was held in trust by F. Cannon & Co. and on commission for the Ludlow Manufacturing Company, and at the time of the fire

Cannon & Co. had on hand 1,134,540 yards of 2-℔. York bagging and 1,124,580 yards of Hub bagging 2¼-℔. weight. This bagging was received by F. Cannon & Co. from the Ludlow Manufacturing Company on consignment, to be sold by them for account of the said company at a commission of 2½ per cent for making sales and collections. The Ludlow Manufacturing Company under the agreement were to pay the freight, transportation, storage, insurance, and all expenses of handling. In making the sale of the bagging, which was put up in rolls of thirty and sixty yards each, the original packages were not broken, but it was sold in the packages in which it was originally received.

After the fire, C. H. Langdeau, an adjuster of the insurance company, called at Cannon & Co.'s office to investigate the loss. He did not offer to replace the bagging, but while in Galveston, in connection with the representatives of some of the other companies, made demand upon Cannon that he and the Ludlow Manufacturing Company furnish a certified statement of the cost of manufacturing the bagging for which he made claim under his several policies, and also a statement of freights, insurance, storage charges, and any additional expense attending or attaching to the bagging, and notified and advised him that the insurance companies held that the maximum liability of the companies wa⁓ limited and restricted to the cost of manufacture, freights, insurance, and storage charges of and on the bagging; that is, the actual bona fide outlay on said bagging to the date of the fire, July 12, 1896. To this basis of settlement Cannon refused to agree, and insisted on settlement on the basis of actual value. About July 30th, Cannon & Co. mailed to the defendant at Richmond, Va., proofs of loss made up in accordance with the terms of the policy, except that they contained no appraisement of the bagging destroyed, and estimated the actual cash value of the bagging upon the basis of the market value thereof at the time of the fire. The company, through its adjuster, wrote to Cannon & Co. that the claim as presented was arbitrary and excessive, and advised him that the company required to be furnished, as a part of proofs of loss, a sworn statement as to their particular, definite, and determined interest, and also that of the Ludlow Manufacturing Company, of Boston, Mass., and that of all or any other persons interested in the bagging destroyed, and referred to the letter of July 18th making demand for data as to the costs of manufacture; and afterwards, on September 29th, wrote him as follows: "In reference to the claim made, I protest and deny that the amount claimed is correct, and do but claim that it is excessive and arbitrary, and not based upon the policy contract, and was not the actual cash value, or what it would then cost the insured to replace." In the letter of October 9th, the adjuster acknowledged the receipt of the proofs of loss which had been returned to Cannon & Co. for correction with regard to the notary's certificate, and said: "Your esteemed favor of the 16th inst. received, containing the notary's certificate and the proofs of loss which now appears to be in proper shape as regards form, that is, for the London Assurance Corporation, Teutonia Insurance

Company, and the Virginia Fire and Marine Insurance Company, being the companies I have in charge and holding their proofs of loss. So far as the companies are concerned, my latest advice is, that they are not disposed to recede from their position as advised."

There was a salvage on the bagging of $9500, *which was agreed to between the adjuster and Cannon & Co.* The total amount of the bagging insured was $144,336.85, as estimated by Cannon & Co. in the proofs of loss, which, after deducting the salvage, made the amount of loss on the entire lot $134,836.85, which was more than the total amount of insurance. The bagging was not replaced by defendant. There was no appraisement of the loss, and none was ever demanded or requested by either party, and no objections were made to the proofs of loss, because they did not contain an award by appraisers. The dispute between Cannon & Co. and the adjuster was as to the basis upon which the loss was to be estimated; Cannon & Co. contending for the actual cash value of the bagging as shown by the market value on the day of the fire, and the adjuster contending that the basis of settlement should be the cost of reproduction of the bagging with freights, charges for storage, etc., added.

Galveston was a large distributing point for bagging, and there was a market there for both 2-℔. bagging and 2¼-℔. bagging, in carload lots and in quantities of from 100,000 to 1,000,000 yards to jobbers. On Saturday, the day preceding the fire, and for several days prior thereto, the market value or selling price in Galveston for 2-℔. and 2¼-℔. bagging in the quantities stated was uniform. These selling prices or market quotations were, in carload lots, 6 18-100 cents per yard for 2-℔. bagging, and 6 60-100 cents per yard for 2¼-℔. bagging. Bagging sold during the same period at a quarter of a cent less to jobbers, in lots of 100,000 to 1,000,000, and Galveston was a well recognized jobbing market for such bagging. There was a uniform and well recognized custom in prices at which sales were made to buyers of carload lots and the jobbing buyers, or buyers who purchased in 100,000 yard lots and over, and this difference was one-fourth of a cent per yard on each weight of bagging in favor of the jobbing buyer. A number of witnesses testified that at the time of the fire the actual cash value of the bagging was 6 18-100 cents per yard for the 2-℔. and 6 60-100 cents per yard for the 2¼-℔. bagging, making a total aggregate value of the bagging at the time of the fire, $144,336.85. These witnesses testified from a knowledge of the market in Galveston, and from experience in the bagging business, and the prices were those at which bagging was sold in carload lots, and were the prices at which Cannon & Co. sold the bagging in carload lots. Cannon testified that no one could have bought the bagging then for less than the prices named; that he was not soliciting the jobbing trade in his business, although he had sold to jobbers recently prior to July 12, 1896, for one-fourth of a cent a yard less than to buyers in carload lots. He testified that the quotations of the market prices in Galveston on Monday, July 13th, were one-fourth of a cent per yard higher than on

Saturday, July 11th, the day previous to the fire; that he tried to buy bagging and could not buy it for less; that he tried dealers for quantities from 100,000 to 1,000,000 yards. There was also evidence before the jury as to the cost of production of bagging and the freight rate in force from different points to Galveston. It was also shown that the Ludlow bagging was of superior finish and quality to the other brands of bagging which were held and offered for sale in Galveston, although the prices were the same for all. There was evidence also tending to show that the price of bagging at the time of the fire was controlled by a combination among the manufacturers.

We conclude that the verdict of the jury upon the controverted issues was supported by the evidence and should be sustained. The most serious question arising upon the facts is in the finding as to actual cash value of the bagging at the time and place of the fire. The total concurrent insurance was $133,500. The highest market value placed upon the bagging by any of the witnesses made the total loss, after deducting the salvage, $134,836.85. This value was for sales in carload lots. It was an uncontroverted fact that bagging was sold recently before the fire at one-quarter of a cent a yard less to jobbers who bought in lots of 100,000 to 1,000,000 yards. If the jobbing price should control the loss, then it would amount to only $129,187.40, a sum less than the total amount of insurance, and plaintiff should not have recovered the full amount of his policy as he did. But is the verdict excessive because it is for more than the jobbing price? The measure of damages to be considered must be the actual cash value, since it was shown and practically not controverted that the bagging destroyed could not have been placed at the time or within a reasonable time thereafter, in the same amount with material of like kind and quality. The actual cash value of an article may be shown by showing the market value, but this is not the only criterion or evidence of it. 1 Sedg. on Dam., secs. 249, 150.

There was, however, no market shown for bagging in Galveston at the time of the loss for the amount of bagging destroyed. Hence the evidence necessarily took a wide range, and testimony was admissible to show what the value was in the market in quantities in which there was a sale for it; prices obtaining before and after the loss; prices in other markets, and freight rates to be added or deducted as the case should require; the costs of replacement, which could be shown by the opinion of experts; and any circumstances that might tend to show what the value was. It was shown that the reduction of one-fourth of a cent a yard to jobbers was a concession made by custom, and there were few buyers as jobbers, while other buyers were numerous. It was also shown that the Ludlow bagging was of a superior make and finish, and sold more readily than the bagging of other manufacturers quoted at the same price in Galveston. Other facts might be added to those stated. There was no evidence of a market value or of prices to jobbers of bagging in quantities of the amount destroyed by the fire. So taking into consideration all the facts legally to be considered in determining the

actual cash value of the bagging destroyed, it can not be said that either the market value of such bagging in carload lots, or the price conceded to jobbers for larger quantities, should control, since these facts are neither of them of a conclusive nature and should have only their weight with the jury together with the other facts admitted in evidence in reaching a verdict.  Blum v. Merchant, 58 Texas, 404; Tucker v. Hamlin, 60 Texas, 174; Wallace v. Finberg, 46 Texas, 35; Heidenheimer v. Schlett, 63 Texas, 396; Horne v. Railway, 69 Texas, 649; Cohen v. Platt, 69 N. Y., 348; Dana v. Fiedler, 12 N. Y., 40; Railway v. Fagan, 72 Texas, 130; 2 Wood on Fire Ins., 1172, 1173.  We conclude, therefore, that the verdict of the jury as to the amount of the recovery is supported by the evidence and should not be disturbed.

The evidence received to show the value of the bagging was objected to by the appellant upon the ground, among others, that the policy stipulated that the value should be ascertained by an appraisement to be made by appraisers selected in the manner therein provided, and that no other evidence of value was admissible.  According to the policy, the ascertainment of the actual cash value was to be made by the insured and the company, or if they differed, then by appraisers; and "in the event of disagreement as to the amount of loss" appraisers were to be appointed in the manner prescribed, who should "estimate and appraise the loss, stating separately sound value and damage."  Other language of the policy shows that the provision for an appraisement was a stipulation inserted for the benefit of the insurer, and might be required or not as it chose, in the event of a disagreement as to the amount of loss.  This language appears in the stipulation, that "the company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof by any *requirement,* act, or proceeding on its part relating to the appraisal, or to any examination herein provided for;" and the further stipulation, that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of loss herein required have been received by the company, including an award by appraisers *when appraisal has been required.*"  We have italicized the words in quotations deemed most pertinent to show the meaning of the policy.  The requirement that proofs of loss be furnished is an unconditonal requirement of the policy, while that for appraisal is one that might be made by the insurer in case of disagreement as to the amount of loss.  No appraisement was insisted on or ever required by the insurer.  It does not appear from the evidence that one was ever mentioned or suggested by either party.  None having been required, competent evidence of any character was admissible to prove the amount of the loss.  It is also to be observed that there was never any disagreement between the parties as to the actual cash value of the property, because the only disagreement that arose was about the basis for the estimation thereof, Cannon claiming the actual cash value in the market as shown by sales of bagging in carload lots, and the

appellant's adjuster insisting that the value should be determined by the cost of manufacture and the cash outlay for freights, etc., up to the time of the fire. Appellant planted itself upon the basis proposed by it and did not yield. Was there anything for the appraisers to do under the terms of the policy, even if the appellant had demanded an appraisement? Since the condition that would bring into force the provision of the policy calling for an appraisement never came about, it can not be said that an appraisement was waived. But if we should be mistaken in the views above expressed, and it should be held that a disagreement arose and the policy required the appellee to have an appraisement before he could maintain his suit, it could have been waived by the appellant, and its acceptance with approval and without objection of the proofs of loss which did not contain an award of appraisers, would have been a waiver of the requirement. Insurance Co. v. Stewart, 38 S. W. Rep., 395. It is clear that the appraisement, if any, was to be made before the proofs of loss were to be furnished, and was required to be a part thereof.

Appellant addressed a special exception to the petition that it did not set out the facts relied on to show that an appraisement had been waived. The petition averred that the policy provided that such loss as might occur "should be ascertained and estimated by plaintiff and defendant, or if these differed, then by appraisers as provided in said policy; but the said provision as to the mode of ascertainment and estimating such loss was waived and dispensed with by defendant in respect of the loss hereinafter mentioned, and said defendant utterly failed to carry out or to insist upon the carrying out of said provision." It was also averred, after setting out the nature thereof required by the policy, that "satisfactory proofs of loss" had been furnished to the defendant. The petition is sufficient to admit evidence to show that the defendant had not required or insisted upon an appraisement, and that there was no objection to the proofs of loss. Hence there was no error in the overruling of the exception. What we have said disposes of quite a number of the appellant's assignments of error relating to the admission of evidence and giving and refusing of instructions to the jury, and we need not dispose of them in detail.

Appellant, in his fourteenth assignment of error, complains of the refusal of the court to instruct the jury, at its request, that the proofs of loss were not evidence of the value of the bagging lost. We think this instruction should have been given, as it was the duty of the court, when requested, to limit the effect of the evidence to the only purpose for which it was competent; but the appellee, Cannon, who swore to the proofs of loss, was on the stand and repeated before the jury the statement therein, and was fully examined and cross-examined touching the same, so we do not see that the appellant could have been prejudiced by the refusal of the charge. The general charge of the court fully covered the special charge number 20 requested by the appellant, the refusal of which is complained of under the twenty-second assignment

of error. Without further specific reference to numerous errors assigned, we conclude that there was no error requiring a reversal of the judgment below, and it will therefore be affirmed.

*Affirmed.*

Writ of error refused.